Matter of Caravella v Toale (2004 NY Slip Op 24325)

Matter of Caravella v Toale

2004 NY Slip Op 24325 [6 Misc 3d 659]

August 18, 2004

Kiedaisch, J.

Family Court, Orange County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, April 20, 2005

[*1]
In the Matter of Michael Caravella, Petitioner,
v
Kelly Ann Toale, Formerly Known as Caravella, Respondent.
Family Court, Orange County, August 18, 2004

APPEARANCES OF COUNSEL

Pinsky & O'Brien, P.C., Goshen (Kelli M. O'Brien of counsel), for respondent. Larkin, Axelrod, Trachte & Tetenbaum, LLP, Newburgh (William J. Larkin of counsel), for petitioner. David L. Darwin, County Attorney, Goshen (Stephen Toole of counsel), for Orange County Department of Social Services.

OPINION OF THE COURT

Debra J. Kiedaisch, J.
The mother has filed objections to the decision and order of the Support Magistrate, dated April 8, 2004, which granted the father's petition for downward modification of his child support obligation for the parties' two children. The Support Magistrate reduced the father's support obligation to $200 biweekly from $340.38 biweekly, where it had been fixed in the parties' divorce judgment.
In his petition, filed June 5, 2003, the father alleges he lost his employment in which he had been earning $41,421 per year stating he "was denied tenure by his employer and was forced to seek other employment." The father further alleges he has been unable to locate a position at the same salary he was previously earning and is currently working as a waiter at a restaurant earning approximately $250 to $300 gross pay each week. The mother objects to the decision and order on the ground it was made without the conducting of a plenary evidentiary hearing upon the merits of the father's petition, and that she was denied standing to oppose the petition.
This court reviewed a tape of the proceedings conducted before the Support Magistrate on March 15, 2004. The tape confirms that, at first, the Support Magistrate had the parties mark exhibits and admitted them into evidence in preparation for the hearing. When the first witness, a support collection unit caseworker, testified that the children were now receiving public assistance, the Support Magistrate suspended the hearing and directed that a representative of the Orange County Department of Social Services (hereafter, DSS) become "involved" in the proceeding. When the hearing recommenced 15 minutes later a representative of DSS can be heard on the record, in response to questioning by the Support Magistrate, accepting an "offer" by the father of $100 per week child support. The DSS representative then stated the offer was acceptable to DSS for the reason that the amount of $100 per week is $2 in excess of the $98 per week (public assistance) grant being paid on behalf of the children. The procedure by which there was an abrupt switch from a plenary evidentiary contested hearing to a settlement being placed upon the record by a DSS representative was not at that point explained on the record. It is only at a later point during a colloquy, which occurs between the mother's attorney and the Support Magistrate, in which the mother's attorney expresses the mother's objection to the [*2]settlement and being denied standing to oppose the father's petition, that the procedure which was being followed became clear. The Support Magistrate determined the mother lacked standing to oppose the father's petition because, in the view of the Support Magistrate, the mother's application for and acceptance of public assistance on behalf of the children resulted in an assignment by the mother to DSS of any rights to child support from the father which assignment deprived the mother of standing to contest the petition when DSS accepted the father's settlement offer.[FN1]

Based on DSS' assent to fixing the father's child support obligation in the amount of $100 per week the Support Magistrate ordered the reduction of the father's support obligation from $340.38 biweekly down to $200 biweekly for the two children with DSS as beneficiary. The father was only perfunctorily questioned by the Support Magistrate as to his income which the father states was $16,152 per year. After deducting FICA taxes, the Support Magistrate determined the father's annual adjusted income was $14,916. No genuine examination was made as to why the father had lost his prior employment and what good-faith efforts he had made to find new employment in the same field paying a comparable salary or what other efforts the father had made to find the highest paying available employment (Matter of Madura v Nass, 304 AD2d 579 [2003]). It remained at all times in this proceeding that the father has the burden of proof to demonstrate he is entitled to the reduction of his child support obligation which he seeks (Klapper v Klapper, 204 AD2d 518 [1994]; Madura v Nass, 304 AD2d 579 [2003]).
The salient issues in this case are whether the mother had standing to oppose the father's petition on the merits, and whether the mother was bound by DSS' assent to reduce the father's child support obligation to $200 biweekly.
The applicable statutes and regulations of the State of New York provide that when the mother applied for and received public assistance monies for the children, that effected by operation of law an assignment to the State and DSS "of any rights to support from any other person" such as the father to which the children have in their own behalf (18 NYCRR 369.1 [d] [1]; Family Ct Act § 571). The statute and regulations also provide that court-ordered support payments from such third parties, as the father, are to be paid directly to the Support Collection Unit (Family Ct Act § 571 [3] [a]). This enables the monies to be directly appropriated to repay DSS. Although Family Court Act § 571 is cast in language which provides that DSS may affirmatively bring a support proceeding in Family Court pursuant to article 4 of the Family Court Act, based on the purpose of the statute, which is to aid in the repayment of public assistance monies, it makes no difference in what capacity as a party, i.e., petitioner or respondent, that DSS is cast. Once an assignment of rights has occurred, the statute and regulations make the local social services district, i.e., Orange County DSS, a necessary or required party to the downward modification of support proceeding initiated by the father since the relief he might be granted could adversely affect the ability of DSS to recoup the public assistance benefits it has provided (Family Ct Act § 571 [1]). Thus, the Support Magistrate was correct in calling for a representative of DSS to become involved in the [*3]proceeding. However, it is not correct that in all such cases the recipient of public assistance benefits is to be excluded or lacks standing to participate and be heard. This conclusion is based on the language of Family Court Act § 571 (2), itself, which, while providing that the DSS official who brings (or in this case defends) against the proceeding is deemed to represent the interests of all persons having an interest in the assignment of the recipient's support rights, also states that the court shall determine in accordance with applicable provisions of law whether a person having an interest in the assignment is a "necessary party" to the proceeding and whether independent counsel should be appointed to represent any party to the assignment or any other person having an interest in the support right.[FN2]

The meaning of "necessary party" includes someone who might be inequitably affected by a judgment or order rendered in the proceeding (CPLR 1001 [a]). The children, of course, have an interest in the assignment as they have a right to receive support from their father (Matter of Modica v Thompson, 300 AD2d 662 [2002]). For the reasons hereafter discussed, the mother, on behalf of the children, is a necessary party to this proceeding with standing to oppose the father's petition.
The Court of Appeals has stated that a parent's paramount duty to support minor children is not abrogated by a child's receipt of public assistance and is not limited to the amount of such grant. The support obligation of a parent of a child receiving public assistance is measured in accordance with the Child Support Standards Act (CSSA; Family Ct Act § 413 et seq.) and may exceed the public assistance grant (Matter of Commissioner of Social Servs. [Wandel] v Segarra, 78 NY2d 220 [1991]; Matter of Dutchess County Dept. of Social Servs. [Day] v Day, 96 NY2d 149 [2001]). Although Family Court Act § 571 (1) and 18 NYCRR 369.1 (d) (1), respectively, use language in referring to "assignment [to DSS] of support rights" and "assignment [to DSS] . . . of any rights to support from any other person," such as the children's right to receive support from a noncustodial parent, which language appears absolute or without limitation on its face, the purpose of the statute is not to enrich the State over and above its public assistance expenditures at the expense of the children receiving support from the noncustodial parent. Rather, the purpose of such assignment, under the statute and regulations creating such assignment, is to enable the State to recoup the public monies it has expended for the support of the children. The assignment under Family Court Act § 571 and 18 NYCRR 369.1 (d) (1) is in the nature of security to recoup an "equitable debt" created when the public assistance safety net steps in to help financially support children which primarily is the obligation of the parents. Under the general principles of law relating to assignments, once the "debt" is repaid and the assignment has served its security purpose the assignment should no longer operate to deprive the children of the right of support from the noncustodial father (Warren v Chemical Bank & Trust Co., 274 App Div 785 [1948]). Furthermore, the Court of Appeals in reviewing the statutory scheme, including Family Court Act § 571, stated in the above cited Segarra case that New York State is a participant in the Aid to Families with Dependent Children (AFDC) distribution program which includes a scheme for the distribution back to the AFDC recipients, [*4]i.e., the children, of court-ordered support collected from the noncustodial parent when the support collected exceeds the amount needed to reimburse the State for the public assistance benefits paid on behalf of the children (Matter of Commissioner of Social Servs. [Wandel] v Segarra, 78 NY2d 220, 225-226 [1991]). Although DSS was entitled to seek support for the children in an amount greater than the public assistance expended on their behalf, DSS did not do so in this case (Matter of Commissioner of Social Servs. of City of N.Y. v Ruben O., 80 NY2d 409, 416-417 [1992]; Matter of Commissioner of Social Servs. [Wandel] v Segarra, 78 NY2d 220, 225-226 [1991]). As noted, the prior support order required the father to pay $340.38 biweekly, or $170.19 per week child support, when DSS, satisfied to simply have the amount of its public assistance grant to the children of $98 per week covered, accepted the father's settlement offer of $100 per week without litigating the merits of the father's entitlement to any reduction of his child support obligation. If the matter had proceeded to trial on the merits it might have been determined that the father was not entitled to any reduction of his child support obligation or to a reduction that was above the amount of the public assistance grant, thereby, preserving the children's rights to receive from the father the excess of support above that needed to repay DSS.[FN3]

The custodial parent mother is presumed to be a person who would vigorously enforce the children's right to receive support from the father and would oppose the father's petition for reduction of such support requiring the father to meet his burden of proof. When DSS failed to do so in this case, the children sustained legal prejudice upon the mother being denied standing to oppose the petition on the children's behalf (Family Ct Act § 571 [2]; CPLR 1001 [a]). Under the circumstances of this case, the Support Magistrate improvidently exercised her discretion in failing to grant the mother standing on behalf of the children to defend against the father's petition, and in not conducting a plenary evidentiary hearing on the merits of the father's petition.
Accordingly, the order of the Support Magistrate, dated April 8, 2004, is vacated and the matter remanded to the Support Magistrate for a plenary hearing on the father's petition seeking downward modification of his child support obligation with the mother granted full status and standing to participate as a party respondent.

Footnotes

Footnote 1: While it is possible there may have been discussions off the record as to the procedure being followed, greater care must be taken to place and clearly state upon the record such material rulings as altered the course of this hearing so that the court may intelligently review any objections, and the parties are granted an opportunity to clearly state on the record their assent or opposition which could affect their right to appeal or file objections to the resulting order.

Footnote 2: The office of the Orange County Attorney will also provide representation to private parties seeking to enforce support rates at reduced attorney's fees rates to represent individuals seeking child support. In this case the mother was already represented by counsel who identifies herself as a former Legal Services attorney who represented the mother in the past and is doing so, pro bono, in this proceeding.

Footnote 3: Possibly, although this court does not now decide such issue, if this case involved a reduction of the father's child support obligation where the public assistance grant already exceeded the father's prior court-ordered support obligation there would be no prejudice in permitting the further reduction without a full plenary hearing since whether the original order remained, or was further reduced, there would be no excess support monies due from the father for the children after DSS was reimbursed for its public assistance. Under the law, once public assistance ended, the mother would have the right to seek a de novo determination of the father's child support obligation (see, Matter of Lafayette v McPherson, 300 AD2d 488 [2002]; Family Ct Act § 571 [3] [b]).